UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN L. BODNER, Individually as Trustee of the AHB Realty Trust, and as Vice President and Owner of Bodytoppers, Inc., )<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATES RESOURCES CORPORATION, )<br>Defendant. ) | Civil Action No. 10cv12134-NG |

GERTNER, D.J.

## MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
March 24, 2011

### I. INTRODUCTION

Plaintiff Alan Bodner ("Bodner") filed a Complaint and Motion for a Temporary Restraining Order in the Middlesex County Superior Court on December 8, 2010, to "stay indefinitely" the foreclosure of the subject properties. Defendant States Resources Corporation ("States") successfully removed that action to this Court on December 10, 2010.

Plaintiff brings claims for fraud, misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, usury, unconscionability, and violations of Mass. Gen. Laws. ch. 93A.

### II. BACKGROUND

The plaintiff and his brother, Paul Bodner ("Paul") conducted a t-shirt imprinting business together, Bodytoppers Inc., for many years. In 1990, the Bodners, as trustees for AHB Realty Trust, executed a note to Somerset Savings Bank ("Somerset") for $711,000, for which they offered a mortgage on two commercial properties (Rear Mystic Avenue, Unit 13 and 20), and one

personal property (Paul's residence at 15 Cataldo Drive) with an interest rate of 10.75%. Compl. ¶ 7; Def. Mem. 3 (document #10).

In the years that followed, as the Bodners fell into arrears, they entered into a series of loan modifications. They first modified the loan with Somerset on November 22, 1994, for $693,830 and secured a 7% interest rate for one year followed by an interest rate of 10%. Two years later, they entered into an Agreement to Amend Mortgage Note with Somerset for $571,849 in order to disencumber the first lien at 15 Cataldo Drive to satisfy a Divorce Decree with Paul's wife. It appears (though the facts as presented are not clear) that the Bodners substituted Paul's residential condo (St. George Seaside Condominiums Unit P1-11F) ("Seaside") for the 15 Cataldo Drive property. At this point, then, the two commercial properties and one personal property remained attached to the debt.

The Note and Mortgages were subsequently transferred from US Trust, as Successor-by-Merger to Somerset, to Plymouth Commercial Mortgage Fund and then to the defendant, State Resources Corporation ("States"), in 1999. The Bodners entered into another Change in Terms Agreement with States in 2001. The balance was now $620,686 with an interest rate of 10% and a final maturity date of December 15, 2011. The two Rear Mystic condos and Seaside condo remained attached. And here, Alan gave a mortgage for his residential condo (Seaside P1-11T) in the amount of $711,000 to secure additional cash.

The Bodners subsequently fell into default and entered into a second Change in Terms Agreement with State ("2004 Agreement"), in the amount of $625,129 with an interest rate of 8% and maturity date of December 25, 2011. Now four condos were attached to this debt (2 Mystic condos and 2 Seaside condos). Their monthly payment was $5,274 in principal and interest.

Still in default, the Bodners sold one of the commercial units in January 2007 for $195,188.76 and applied those proceeds to their debt. In July 2008, they entered into the Change in Terms Agreement ("2008 Agreement") that is at issue in this case. Their new balance was $414,857, with an interest rate of 9.25% and a maturity date of July 1, 2013. Their new monthly payment for this five-year term was $5,418 in principal and interest, more than their previous payment. Now three condos are attached to the Note. Both Alan and Paul signed personal guarantees to guarantee the debt.

The Bodners defaulted again, and in February 2009, States began foreclosure proceedings against the two residential Seaside properties. Then on May 20, 2009, States began foreclosure proceedings against the commercial Mystic property. According to the defendant, these properties are worth approximately $234,500, $234,500, and $250,000 respectively. The Bodners owe a total of $511,863 on the debt, not including attorney's fees for the present action. Alan's personal residence is also encumbered with a primary mortgage.

These foreclosures were stayed while Paul Bodner filed for bankruptcy, which was dismissed and terminated. He is not a party to this suit, and the defendant claims that he is a necessary party who should be joined. (He has filed an Affidavit.)

Alan filed the current action in Middlesex County Superior Court on December 8, 2010, and State removed the action to this Court. The foreclosure was rescheduled and then stayed again pending this action.

Most of the modification agreements were negotiated and executed by Paul. Alan and Paul allege that when Paul negotiated the terms of the 2008 Agreement, he was promised by SRC's representative and agent that the Agreement would be renegotiated soon, which it was not.

See Alan and Paul Affidavits (document #1-2). They claim that they never would have entered into that agreement or signed those personal guarantees if they had not believed that the terms would be renegotiated. Id. Paul attempted to contact States to refinance and his calls were rebuffed. Id. They maintain that States had no intention of servicing their loan and planned instead to secure the collateral.

## III.   ANALYSIS

Bodner has filed a Motion for Preliminary Injunction (document #5). To prevail on a motion for a preliminary injunction, the plaintiff must show i) a substantial likelihood of success on the merits; ii) irreparable harm if relief is not granted; iii) the harm to the movant outweighs any harm to the opposing party; and iv) the injunction is in the public interest. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Plaintiff has not shown a substantial likelihood of success on the merits, and therefore I need not address the last three elements.

As a preliminary matter, the plaintiff's 93A claims are procedurally barred because he failed to serve a demand letter as required by Mass. Gen. Laws ch. 93A § 9(3). This prerequisite to suit is unwavering and well-established. Rodi v. So. N.E. Sch. of Law, 389 F.3d 5 (1st Cir. 2004).

The remainder of his claims focus primarily on the alleged usurious interest rate of a Change in Terms Agreement dated July 1, 2008 ("the 2008 Agreement"). Pl.'s Mem. in Supp. of Mot. for Prelim. Inj., Ex. A (document #6-1). As the defendant points out, however, the plaintiff's calculations are based on a thirty-year mortgage, not the five-year term at issue here. It is true that the new terms were not as good as the terms of the previous mortgage (the 2004 Agreement), but it is also true that plaintiff was renegotiating after default. The plaintiff has

produced no authority that a mortgage modification post default that deals with arrearage must have lower monthly payments or a lower interest rate.  The interest rate as modified was far from the usury limit of 20%.  See Mass. Gen. Laws ch. 271 § 49.

Nor is the 2008 Agreement unconscionable.  A contract is unenforceable as unconscionable when the "sum total of its provisions drives too hard a bargain for a court of conscience to assist."  Waters v. Min. Ltd., 412 Mass. 64, 66 (1992).  The 9.25% interest rate on a five year loan does not seem "too hard a bargain" for this Court to enforce -- particularly after years of default.  Nor is plaintiff's personal guarantee unconscionable.  Plaintiff had offered their personal residences as security to the debt at the start - years before the debt was transferred to defendant.

Plaintiff's remaining claims for breach of contract, estoppel, fraud, and misrepresentation are based on the breach of an implied contract to renegotiate the terms of the 2008 Agreement.  This is not a case where the bank foreclosed immediately after default.  Defendant has serviced this loan since 1999 and is only now attempting foreclosure.  And the plaintiff does not allege any wrongdoing in the foreclosure proceedings themselves -- indeed foreclosure has been stayed pending this litigation and defendant appears to be acting fairly.  I find that plaintiff does not have a likelihood of success on these claims as well.

For the reasons set forth above, plaintiff's Motion for Preliminary Injunction (document #5) is **DENIED**.

**SO ORDERED.**

**Date:   March 24, 2011**          */s/ Nancy Gertner*
                                    **NANCY GERTNER, U.S.D.J.**